The Court is at the discretion of the doctrine, Steger dash 14-0706, the people of the state of Illinois, Clinton, Appalooh, and the Williamsville, Mississauga, Department of Defense, and the Defense. Attorney General on behalf of the Department of Defense, Mr. Bruce Perkin. Attorney General on behalf of the Appalooh, Mississauga, Appalooh, Ms. Joanne Perkin. Mr. Perkin. May it please the Court and Counsel. Good morning, Your Honors. Good morning, sir. This appeal from the second stage dismissal of James Zolikoffer's post-conviction petition presents two issues for this Court. First, the State has asked this Court to reconsider its challenge to this Court's jurisdiction to hear this appeal. And second, Mr. Zolikoffer has asked this Court to remand this cause to the trial court for proper admonitions required by People v. Shellstrom when a court recalculizes a pro se pleading into a post-conviction petition. Regarding the jurisdiction issue, in order for the State to prevail, this Court must accept the State's premise that the petitioner had two separate post-conviction petitions that were independently considered and independently and separately dismissed by the trial court. Only if this Court finds there are two separate final judgments is there factual support for the State's jurisdiction argument. And the State cannot prevail when the record shows the trial court treated the petitioner's pleadings as a single post-conviction petition. The only way you can find separately dismissed pleadings is to permit the State to break apart the post-conviction petition in the trial court by filing two separate motions to dismiss at the second stage of post-conviction proceedings. This case basically comes down to Shellstrom, truly. Do you agree? That would be the merits of a, and that's the issue that we raised on appeal that should be remanded for Shellstrom admonitions. Yes, Your Honor. They didn't, the State argues jurisdiction, but did at any time the Court admonish the defendant giving him that opportunity to amend or withdraw that 214.01 or post-conviction petition, whatever they thought it was? Yes, the defendant was present in court at the time that the 214.01 petition was ostensibly re-characterized as a post-conviction petition. The Court did address the defendant, warned him that he intended to re-characterize the petition for relief from judgment, asked him if he wanted to make amendments. However, there's a third part of the Shellstrom admonitions that the Court did not address with the defendant or the petitioner. And that is to inform him of the future consequences of bringing new post-conviction claims at a later time and that they have to clear the procedural hurdle of showing cause of prejudice as required in successive post-conviction petitions. So that's the part that was missing in the Court's colloquy with the defendant. What was that memo that was filed? It was a memo to a post-conviction petition. The trial court seemed to treat that as a post-conviction petition in and of itself. Judge Hallock said that he thought that Judge DiMarzio had actually re-characterized that as a post-conviction petition. Is that correct? That is correct. Judge Hallock did say in his written order, dismissing claims, said that he reviewed that a couple of different times, Judge DiMarzio's order, and found that the memorandum in support of post-conviction petition, he treated that as a post-conviction petition, as Judge Hallock's conclusion. Is that something that has to have in the management's too, or was that, since it was filed as a memo to a post-conviction petition, that really wasn't a re-characterization, it was simply a post-conviction petition and treated as such? Judge Hallock commented that it's unusual to re-characterize a memo as a post-conviction petition, and apparently without the Shellstrom admonitions, that occurred in 2006. What's your take on that? Do you think Shellstrom admonitions needed to be given if a memo for a post-conviction petition is re-characterized? Any plea that's re-characterized as a post-conviction petition... Well, I guess my question, I'm going to withdraw that question. My question to you is, in your opinion, was it a re-characterization, or was it simply a post-conviction petition? I think you can... Well, the problem here is that we don't seem to be able to find anything that's called a post-conviction petition. So a memorandum in support of a post-conviction petition leaves us with that mystery of what happened in 2005 and 2006. In the absence of the post-conviction petition, the memo was treated as a post-conviction petition. But when post-conviction claims are filed in multiple pleadings, they're all considered a post-conviction petition. It's hard to say what exactly happened. Well, I mean, the reason I ask that is, I'm not just trying to ask it to ask it. If, in fact, that was a post-conviction petition, not re-characterized... Correct. ...then really what's the prejudice to a lack of Shellstrom admonishments regarding the 214-01? Because he thought, I mean, the Shellstrom admonishment would be, hey, you're stuck with successive. If you, you know, whatever you stick with there, you're stuck with successive. Whereas if, here we have this other filing that's, if, in fact, it was a post-conviction petition and treated as such, what's the difference regarding the Shellstrom admonishments on the 214-01? Because he's already filed a post-conviction that anything he files after either of these two things would then be a successive petition. Right. Well, you know, I hope we're having a case of people versus Stoffel, which says that when a trial court re-characterizes something as a petition and counsel is appointed, Shellstrom admonitions are not required because the 651, Rule 651 requirements of consultation with the petitioner, an amendment of the pleadings, obviates the necessity of Shellstrom admonitions. But I think what you've got to look at here is, you know, Stoffel is distinguishable from what happened in this case because you have a 214-01 petition that's filed in 2005. The memorandum's filed in 2006. Counsel's appointed. It lays dormant for five and a half years and we come back and there's massive confusion as to whether it was an original APC or not. The re-characterization in this case occurred very late in the procedures of this case. In fact, it occurred one court hearing before argument on the motion to dismiss. By that time, prior to that, appointed counsel had moved to withdraw and that motion was denied for reasons I do not understand. The attorney-client relationship, by the time that the 214-01 petition was re-characterized, it deteriorated to the point where Mr. Zolikoffer argued pro se against the state's motion to dismiss. If you look at Stoffel, you know, you have an attorney who is charged with representing a client on a given petition. In this case, Mr. Warwick was not appointed on the 214-01 petition. He was appointed on the memo. So he was on a different plea than was his appointment. So that distinguishes Stoffel. And for all intents and purposes, for the re-characterization of the 214-01, the defendant was essentially pro se. By that time, the attorney-client relationship had deteriorated to the point of being practically nonexistent. Counsel wanted off. Trial court wouldn't let him off of the case. He was required to stay on there. You can't say or you can't presume that there was any meaningful discussions regarding consequences of re-characterization of the petition for relief from judgment regarding later success in the post-conviction petitions. So I understand your question regarding the re-characterization of the memo, because he was represented by client on that plea. How many years later, eight or nine years later, when they get around to re-characterizing the petition for relief from judgment, the defendant is essentially back to a pro se position on his petition for relief from judgment. And you can't replace shell-string acquisitions with a non-existent or seriously damaged attorney-client relationship. Was there a 651 affidavit filed in the memo case? Yes. Yes. Mr. Lohrig did file a little 651C compliance certificate. And I believe that was filed just a matter of a few weeks before this motion was drawn as counsel was filed. You know, this record really indicates that even though we don't have him here to question and we don't, you know, we can't make a formal determination, Judge DiMarzio said at one point in an order that he set it for second stage. In 214-01, there are no stages. It either they plead, they dismiss, they set it for second, he set it for second stage. Lohrig, on the record, says, well, Judge, that's the way I sort of address, that's the way I've looked at it all along, and that's how I'm going to file my 651C and that's how I'm going to answer. So as far back as 2006, they're considering that, but nobody really ever, you know, does the admonitions. And it looks like Halleck, when he's reviewing this, realizes that and goes through the process. So, I mean, it seems like this has always been treated as a PCP as opposed to a 214-01. Well, I'm not sure that's entirely true. I know that Mr. Lohrig indicated that he was aware, he was clearly aware from the record of the claims brought in the 214-01 petition, but he chose not to amend the petition. He never filed an amended petition. But he was never appointed to represent Mr. Zollicoffer on that petition. Well, when it went to second stage, that's when he got appointed, because if it were first stage, he wouldn't be entitled. I mean, if this was a real PCP, he would not be entitled to an attorney at the first stage. He would be at the second stage. Attorney was appointed. That's Mr. Lohrig. And, you know, there's a passage of time here. Unfortunately, when Judge DiMarzio retired, this case retired too. And the other problem we have with this record is even before this all happened and Judge DiMarzio was gone, Mr. Zollicoffer is filing claim after petition after claim, pro se, that never seem to be resolved. I couldn't find orders striking them or dismissing them, and that creates, obviously, another confusion. So it's even hard to say he didn't make amendments, either through Lohrig or himself. Well, which maybe is the answer to our mystery of why the motion to withdraw his counsel was denied, because all pleadings must be filed through counsel. You know, there certainly are a number of pro se pleadings, including right after a matter of a few weeks after the recharacterization of the petition for relief from judgment, accusing Mr. Lohrig of misconduct and being in cahoots with the state and sabotaging the defendant's case. I mean, it was clear that at the time of the recharacterization, when they finally got around to it, that there really wasn't a meaningful relationship there. Yeah, I mean, this case is a labyrinth in the dark, trying to figure out every twisted turn that we've come through. But if Judge Hallock tries to correct the record, because he wasn't there when this all happened, the only persons that were there were Zollicoffer, and he wasn't there a lot. He got rid of him a couple of times. But once Lohrig was appointed, Lohrig was always there. So I think that's why he ended up staying in the case. There had to be some historian in this case, and he was the only one that was left available. But once, and it's clear, on August 14th of, I think it's 24th and 20-something, when Judge Hallock went through the file, 2014, May 7th of 2014, he realized that there were certain things that had to be fixed, as it were, and he tried to even it out. And he didn't, I think he called it retitling at that point. And Mr. Zollicoffer was nodding, that's fine. And Lohrig said, that's what my client wants to do. So I think Hallock kind of was in the position of trying to figure out how to make a record so that we could actually look at this if it had to be done. Right. And I think another genesis of the recharacterization of the petition for removal from judgment was when the state said, we don't have a post-conviction petition to move to dismiss here. Right. So that. But they kept making motions to dismiss things, as if it were. So, I mean, I think. So Mr. Lohrig was appointed on the memo, and there were a separate set of issues, and he moved to withdraw on those. You know, does that mean that he was de facto appointed or consulted with Mr. Zollicoffer in specific regard to the 214-01 petition? I mean, I don't think we can make that presumption. Well, it looks like Mr. Zollicoffer, at least as I looked at the record, filed the 214-01. But then when the memo comes about 14 months, 15 months later, for all intents and purposes, it looks like that memo got round-tabled. There are three different, at least three different writing samples. Some are in pencil. Some are in pen. And there's some pages missing. So, I mean, it looks like somebody was helping him, and that may have complicated things. Which is the nature of processing. The same attorney, right, throughout the entire proceedings? Yes. Yes. And this attorney on October 17 of 13 said that he had treated the 214-01 memo as one post-conviction petition. Correct? Correct. So if he treated both these filings as one global petition, why wouldn't the 651 affidavit apply to everything? Because he wasn't appointed on the petition for relief from judgment. His obligation under 651 is to consult with the defendant to ascertain his contentions of errors and potential issues. Why did he say on October 17 of 13 that he treated these as a single plea he brought before the court? Because he was obligated to amend the petition to include all, to include issues, or additional and new issues that the defendant claimed would have brought before the court. How could he have been appointed on the 214-01 at second stage? There is no second stage of a 214-01. Well, right. And that's why, you know, it's well into 2013, right at the very end of the case. I mean, when we finally get around to recharacterizing this petition, all along Mr. Rorich representing Mr. Zolikoffer on the memorandum that's being treated as a petition. So when the 214-01 petition finally gets recharacterized, you know, it's so late in the process that we just can't be certain or can't be assured that the policies that require the Shellstrom admonitions were given to Mr. Zolikoffer, that that discussion occurred at any point. You know, it's not the clean case of Stoffel. It's not a close say 214-01 petition where the trial court says, I'm going to treat this as a PC, counsel's appointed, and directed to file a 651-C certificate. You can presume then that by filing that certificate, counsel has consulted with the defendant regarding that specific petition. In this case, Mr. Rorich was never appointed on the petition for relief from judgment, and we can't presume from this record that those Shellstrom principles were ever discussed with him as they relate to that petition for relief from judgment. Thank you, sir. Thank you. Mr. Kripke. May it please the Court, John Kripke, on behalf of the people of the State of Illinois, counsel, we're asking this Court to reconsider whether or not it has jurisdiction over the question raised by the defendant. Why don't we? You've got to give me a date, because I have looked through this entire record, and I don't know other than the transmission of the clerk of the court, which is really just a function that they assume because they get a piece of paper and that piece of paper looks like they have to do something else. So what do you think is not the procedure but the substantive issue that causes us not to have jurisdiction? You don't have jurisdiction because the Shellstrom problem relates back to, I'm going to call it 214-01, just the 214-01 to distinguish it from the later pleading. The 214-01 was argued and dismissed, and the defendant was sent notice of dismissal, and he never appealed from it. Yeah, May 7th. I think it would eventually be May 14th because he waited a week before they sent it. Whichever date, within 30 days of May 7th or May 14th, he did not appeal. They then have that six-month time period where they can move for a late notice of appeal to this court, which would have fallen within the time that the defenders had the case from the April 6th ruling or notice of appeal from the ruling on the PC. And when you look at the notice of appeal, it says it's on appeal from the August 6th, 2014 ruling. They never included the May 7th ruling in their notice of appeal, and they never filed, they still had time to amend, to ask leave to either amend the notice of appeal or to ask leave to file a second notice of appeal for the May 7th ruling, and they didn't do any of that. So the Shellstrom question goes back to that. But on May 7th, and this is as clear as, sometimes people say mud, but this is as clear as a blue sky, Judge Gallick says in his memo, as to the memo of law docketed as a petition on August 24th, 2006, and that is Judge DiMarzio's order, the issues raised by petitioner have yet to be addressed by the party and the court finds they are still pending. But those issues are pending. Those issues are pending. But also, on page 8 of our brief, I cited to the little discussion between the court and Mr. Lorick before the defendant, before they did the hearing on the 214-01 petition. And, excuse me, what they said is he, Lorick asked, do you want me to stay on? And the court said, yes, for purposes of filing a notice of appeal, yes, if you would stay in. And then, you know, if the ruling is adverse. And he said, then the court said, if it is adverse toward him. Not adverse to him. Pardon me? The court said if it's not adverse to him, then stay in. See, we'll be reading him back. And then the second paragraph, he said, if it is adverse to him, then I presume that you would file a notice of appeal and I would appoint the appellate defender. Nobody filed a notice of appeal. So you don't have jurisdiction over it. I would also argue, I mean, Mr. Kirkham and I were both a bit confused by the order from this court denying my initial motion to furlough jurisdiction. And the court said, well, the appellee's motion to dismiss appeal is denied. The court, having found the August 6, 2014, judgment was included in the trial court's order of May 7. Well, if that's the case, then there's nothing here that you have jurisdiction over because they never filed a notice of appeal for May 7. Both of us think maybe there was a confusion on this. It was probably a transposition. Well, I called the court. I just wanted to say that I did, when I got the order, I did call and spoke to the clerk of the court. And I asked him, I said, do I need to file a motion for clarification? And what came back to me was an emphatic, no, this is what the court meant. And you're saying that that's what happened? In light of what you said about that colloquy on May 1, I mean, did Judge Halleck, though, lead the defendant a little bit down a criminalist path? You know, Judge Halleck knew at the end of that 5-1 hearing that the defendant, if it was adverse to him, he wanted to file a notice of appeal, he wanted to have the appointment of the appellate defender. But Judge Halleck doesn't reference that in the May 7 order. What he says is basically, you know, we still have some post-conviction issues pending, and we're going to resolve them and set a status date for whatever. But does he have to say it in the order? I mean, does he have to say it? But regardless of whether he stated it or not, the notice was sent to him. And he talked to Lark about this. I mean, they discussed it. If it's adverse, I want you to file a notice of appeal for him. Nobody filed the notice of appeal. Maybe he was wrong. I mean, ultimately, when he comes back 6 days later, he kind of, or when he comes back with the order, he kind of reconsiders his own position. And the fact that they sent a notice, again, I don't find that dispositive of this issue, the fact that the clerk's office sent a notice to him. I don't know what, you know, that's interesting because I had a case here a number of years ago where I argued the exact thing that the clerk's office doesn't do is dispositive in terms of stamping a PC petition as to when the 90 days is up. And not only did this court come and say I was wrong, but the Supreme Court affirmed you and said, yes, it's dispositive what the clerk's office does. Now you're telling me. When they spread it at record, it does, in People v. Perez, it was when they spread it at record, we were both here. Okay. And they did not talk about what, everything they do is right. They said when their issue was when they spread that notice of record, that's the date. Not 17 years later, as was advocated by the dissent in that case. Well. So we can't, we. I mean, I'm always looking for consistency in terms of who has authority, and it seems here the court does, there the court doesn't. And the court, the trial court does not have authority to say you shall file a notice of appeal to this. They don't. He said, I presume that you would file a notice of appeal. He's not saying you have to do it. Well, I mean, it's a suggestion, but the attorney doesn't have to take the suggestion. Okay, but the defendant got a notice. The defendant was really good with the pro se stuff, let him file a notice of appeal. He was good at filing it, but none of them made any sense. All right. Well, a notice of appeal is not that when you get a form. But I would like to go back to a couple of points here. First of all, Mr. Kirk, I would like to go through a timetable. On May 18th, 2005, the defendant filed a 214-01. Done. Nobody discusses this 214-01 again until we come into modern times after the gap of time. So on July 18th of 2006, which is 14 months later, the defendant files a notice of filing a PCP. Just the paper. The next day on July 19th, he files with a proof of service a PC with an original for the judge, which none of us has seen. It's disappeared. On July 18th, he attached to the proof of service this memorandum of law. On August 24th of 06, they docketed the PC. And in November of 06, the public defender's office was appointed, which means Judge DiMarzio, not Judge Halleck, moved it to the second stage. Maybe I misunderstood, but I thought it was set up here that it was Judge Halleck who moved it to the second stage. No, I think what Judge Halleck tried to do was clarify the record. Judge DiMarzio always considered both of these files, I believe, from looking at this record and looking at the things he said. He considered the 14-01 to be the PCP, which we never saw, and we don't know that he ever saw it. You say he did, but we have no evidence that he did. Well, but, you know, first of all, I disagree with that because that is the speculation of Judge Halleck. Well, I guess Judge DiMarzio must have considered this. You have no proof of it. That's complete speculation. But we have a record that does not have a PCP in it. Right. And that we have to accept. But Judge Halleck asked the defendant, did you consider your – no, Judge Halleck asked the defendant, do you have a copy of the PCP? And he said, no, I can't find my copy. If I'm remembering the correct case, I believe he said something happened at the jail or whatever. He said all my papers were taken. He didn't say my 214-01 was what I considered to be my PC. He never said that. And how can you consider something that has been filed 14 months later to relate back? Because it was called a memo in support of. Of a PCP. Because it was always being treated like that by Judge DiMarzio. No, wait a minute, wait a minute. 90 days had gone by. No, no, no, no, no, no. He filed the 214-01 on May 18th, 2005. End of story. Nothing else is discussed about that. 14 months later, in July of 2006, he starts filing documents labeled PCP. Not 214-01. With the memo attached. The memo is a memorandum of law relating to the PCP only. And when they asked him, he said, I don't have my copy of the PCP itself. He didn't say, oh, the 214-01 was really the basis for the memorandum of law. And indeed, when you look at the arguments, if they were one and the same, they don't match up. Because the arguments in the PCP aren't the arguments made in the memorandum of law. So how can you say that's really the PCP? It's not. Isn't the issue really, though, whether Judge Halleck treated these two filings as one filing? Yes, and he didn't. He didn't. He allowed the state to file two motions to dismiss. If he had wanted to treat them as one, what he said was, oh, you know, we've got to clean up this other mess with the PCP. So let's recharacterize the memo of law as the PCP, and then we'll consider that as a PCP. But he didn't treat it as a successive petition either. Right. He just treated it because he was treating the- This record, it's like trying to grab on a Jell-O. I mean, that's the problem here. I mean, and shouldn't the benefit of trying to grab on a Jell-O in order to the defendant as opposed to the state? No, not in this case. Not in this Jell-O case, because- Would there be any case that you would say maybe yes? I'm just asking. You've been here a long time. Sure, I've confessed error many times, but not on this. Well, that's a confession error. That's not the issue right now. No, I just-that's unfair. I really do look at both sides. I think what the problem is here is that the judge allows-well, the state-nobody ever objected. The state came in, filed two motions to dismiss. He and those mysterious notices went out too. Now, if you're going to say the first one was just a filing, then I can say, well, the second one was just a filing. Maybe there's something else that was out there pending. I mean, you can't say that when they-he dismissed the first-the 214-01 that you can't just say, ah, the filing that they sent from the clerk's office doesn't count because the second one certainly counted. I mean, somewhere you have to say they both count or they both don't count. So-but what the problem is here is that regardless of whether you-is the-is what the remedy is. And the fact is, is when it came up on appeal, the defendant didn't raise a single question regarding the PC, the August 6th adjudication. They didn't say unreasonable assistance of-of the PC counsel for failing to raise the following issues that would be salient for the following reasons. So they said nothing. They-so what are we sending this back for in the end? And what Shellstrom says and what Stoffel also says is when you-when you-let me get the quote on that because I can't- If the court fails to give all three Shellstrom admonishments, the pleading can-and this is the quote- the pleading cannot be considered to have become a PC petition for purposes of applying two later pleadings that acts restrictions on successive PC petitions. So-so what? He got the second petition. I mean, he-he filed the 214-01. It was recharacterized. They adjudicated it. He even got to amend that petition. And-and- He did what he said. You're-you're saying that they didn't recharacterize that 214-01 as a PCP. No, they-they did. They absolutely did. And then they let him amend it. And-and Mr. Kurtz- But then did they give him the admonishments concerning the dangers of amending it? No, they didn't. And I admit that. But the point is-is so what? He-then they considered a PC he had already filed. So now he has the 214 recharacterized. They adjudicate that. Now he has his memorandum of law now considered to be a PC. They consider it. Nobody amended that below if there were other issues. And I don't think anybody would have objected. And then they come up here on appeal. What are the burning issues that he would have been-that he was being kept-denied? Nothing, because they didn't say anything about the denial of the memorandum of law recharacterized as a PC. They were silent on it. So there's nothing to remand it for. When did he file the petition-214-01 petition that was re-recharacterized? May 18th, 05. That's when it was filed. And who recharacterized it? Judge Halleck recharacterized it on January 15th, 2014. Okay. And he did not take into consideration-well, right there, but it was Apprendi. We know that won't come up. In May of 2005, it alleged Apprendi, a Sixth Amendment violation, and that the attempt on robbery was actually a void charge. Okay. Well, none of those are kind of water today, so why would they bring them up? I'm not talking about that. I'm talking about the memorandum of law that was-they did the 214-01. They didn't give proper admonishments. So what was he denied? He was allowed to file a subsequent PCP. Right. He filed the subsequent PCP. When? He filed that on-well, the memorandum of law was on July 18th, 2006. Okay. They were adjudicated separately. Nobody below amended that PC. Nobody objected and said, you know, this is a subsequent PC. Actually, it wasn't because when it was filed, you're allowed to file a 214-01, you're allowed to file a PC. So he had two collateral attacks on his- Yeah, but once the 214-01 was recategorized as a post-conviction, he, in essence, filed a subsequent post-conviction petition. Well, it had already been filed, so it's outstanding. They heard a subsequent- They heard the subsequent one. It wasn't amended. That was dismissed. It comes up here in appeal, and the defense is silent about any burning issue that the defendant didn't get to raise because he didn't get the Shellstrom admonishments. And so there's nothing to remand it for. I still think that you don't have jurisdiction over the question to begin with because I think that they needed to file a notice of appeal or to amend a notice of appeal once on August 16-1 or to have filed a motion for a late notice of appeal once they were up here and they saw that there were these two adjudications. They should have covered both of them, but I don't think the cases that they cite to are relevant or salient in this particular case because Takara and those others are like, there's a PC and the court adjudicates issues one through three. They come up on appeal, and then they adjudicate the other four through six. That's not what happened here. These are two separate documents, and we just have this gap of time. And, you know, why the defendant wasn't filing letters saying what happened to my stuff, I don't know, but basically the defenders dropped the ball below. And now they're asking for their failure to follow through to be cut a break, and they're the ones who created the jello situation, Justice Burke. So why should we reward them for failing to do what they were supposed to have done seven years earlier? Who are the defenders? The public defenders below. Oh, okay. In 2007, the last thing we hear is, oh, I guess I have to amend the PC, and then we have this six-and-a-half, seven-year gap. Attorney Lark didn't have anybody to appear in front of at that point. Well, we'd have non-objectors. Yeah, where'd they go? I mean, isn't it his duty to have appealed to somebody and said, I have a PC here and I need to be assigned a court order? Nobody brought that to our attention. This is the first time I heard it. Well, it's in the record. I mean, in 2007. I know what the record says, but this is the first time I perceived your argument with that. Okay. All right. Well, we ask you to reverse your ruling on our motion that you don't have jurisdiction, to find that you don't have jurisdiction over that, and then to affirm the dismissal of the PC that was dismissed on August 2014. Thank you. Thank you, Ms. Perkin. Mr. Perkin. Mr. Kirkham, can you answer one very basic question for me based on what Ms. Perkin argued? What are we sending this back for? For the defendant, the petitioner, Mr. Zolikoff, to be properly admonished that the recarticization of his petition for relief from judgment will result in future post-conviction claims being subjected to the cause and prejudice test. And how does the memo and the ruling on the memo play into that at all? So basically, if we do that, he can then file through counsel a new petition that alleges everything that's been resolved already, correct? Plus other things, if he wants. Plus other things, if he wants. Right. But including everything that's been resolved already. Correct. Because, again, I guess the brass tacks are that you're saying this was all one petition, so therefore he should be allowed to amend it even though presumably he got advice of counsel on the memo. Correct. I mean, again, if he got advice of counsel on the memo and counsel said, what do you want to bring to the table, and the defendant said, this is what I want to bring to the table, why are we remanding? Because I think the crux of the three Shelstrom-Adler missions, the one that was amended is the crux of what the defendant has to be made aware of. Number one, we're recharacterizing your petition. You have to understand that future petitions will be subjected to successive petition restrictions. You have the opportunity to amend it or withdraw it at this time. Without that essential future consequences admonition, then it's easy for the defendant to say, you know, okay, let's go with what I got now, and I'll just file a new one later. We'll not be made aware of the potential consequences of agreeing to have this petition recharacterized as a post-conviction petition. Didn't he get a second subsequent post-conviction petition? I mean, if you look at the 214-01, and if you believe what Ms. Kirby says, that it was recharacterized by Judge Halleck, even if he didn't get admonished correctly, he filed a second post-conviction petition, albeit it was already filed, but he got a hearing on that. So where's the harm? Well, because those petitions were filed in 2005 and 2006, and Mr. Warwick declined to advance them or to amend them or do anything with them, and, in fact, filed a motion to withdraw as Mr. Zunig offers counsel. Then in 2014, or 2013, we're saying, well, we're going to recharacterize this. Are you okay with that? Well, yeah, sure, okay. But there's never any assurance here that he is made aware that he has future consequences. He got an 80-year sentence. That's a de facto life sentence here. And he may have issues that he discovers later that he wants to bring in a post-conviction petition. Okay, so if we have a circumstance where that 214-01 was recharacterized and the petition, the second, the post-conviction petition were filed later, we wouldn't be having this discussion? Is it the fact that they were filed kind of simultaneously? I'm sorry. I'm not following. I mean, you're saying he didn't have an opportunity to think about some new arguments that he might find down the road, but that 214-01 was filed in 2005, and then the post-conviction petition was filed in 2006. So he had a year to come up with new arguments, different arguments than in the 214-01, correct? I mean, almost as soon as the recharacterization occurred, he's filing more issues. He's a man with issues. And he needs to understand, he needs to be told that if you allow this 214-01 petition to be recharacterized, there are future procedural consequences that amount to a high hurdle that you have to clear to get those cases before a judge. Was he actually told that he could withdraw the petition? I thought he was told that he could amend, but he wasn't told he could withdraw. I believe you may be correct on that. I can't say for sure that he was told. And if I said that, I don't know the answer to that. A couple of quick points here. The state says a defendant has dropped the ball below and shouldn't be reported by this court below me. That's not what happened here. The reason we have a jurisdiction problem and the state has a jurisdiction issue is because the state filed two separate motions to dismiss. That's not the defendant's fault, okay? I'm not saying the state set this up to create two final judgments by filing two motions to dismiss and getting two separate orders of the trial court to dismiss these post-conviction claims, but that's the effect of what happened here. You know, this is one petition, one set of claims. The state filed two different motions. Judge Howell ruled on the first motion in his order. As Justice Hutchinson read from the order, he said there's unresolved claims. The state then files its second motion to dismiss. That's what happened here. All this talk about discussing what would happen if there's an adverse ruling back in 2007, that doesn't affect what happened here in terms of the state's jurisdiction argument. You know, the state can't set up two final judgments and say, oh, you only appealed from the second one, you waived all your claims on the first one. That's where we're at here. So when you filed a remorseful appeal and only included the date of the second one, you're basically saying all those are orders in the procedural process leading to the final judgment. That's correct, and that's the argument that I made in my briefing, in my objections, in response to the state's motion to dismiss. You know, these cases for Carr, Clark, Garcia, it's clear that Illinois courts disfavor piecemeal dismissal of post-conviction claims. You know, you wait until the entire petition is disposed of. That's one final judgment, and you have 30 days to file an appeal for that. Just because the state files multiple motions to dismiss at second stage and gets multiple rulings from the court doesn't mean we have multiple final judgments. For Carr, Clark, Garcia are clear on that. The other thing I want to – I know I'm running out of time here, but there's another thing I want to respond to that the state argued that, and that's this notion that the defendant doesn't enhance any substantive issues on appeal here. Justice Hutchinson was the author of People v. Caliendo, in which Your Honor made it clear that the Cronus Error is not a factor here. You know, I'll read from the decision. In this case, however, it's not about the substance or merits of the defendant's petition. The question here, rather, is solely one of the procedures to which the trial court must adhere upon re-characterization. All this talk about whether you enhance any substantive issues or don't appeal any substantive issues, that's not in play here. This is a procedural question that's resolved by this Court's decision in Caliendo. If there are no more questions, I'm going to just ask this Court to remand this cause for further proceedings. This is Elizabeth Shostrom. Thank you, Mr. Kirkley. Thank you, Mr. Kirkley. Thank you for your arguments here today. Gentlemen, thanks for coming in all morning and sitting around. We would like to see you. Have a great day. This case will be taken under consideration in a decision rendered in due course. We are adjourned for today. Thanks so much.